# UNITED STATES DISTRICT COURT
for the
Southern District of California

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br><br>Blue iPhone Cell Phone<br>Seized as FP&F No. 2021565300020501<br>("Target Device") | ) ) ) ) ) ) Case No. **21-MJ-1196** |

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:
See Attachment A, incorporated herein by reference.

located in the ___Southern___ District of ___California___, there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B, incorporated herein by reference.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
☑ evidence of a crime;
☐ contraband, fruits of crime, or other items illegally possessed;
☐ property designed for use, intended for use, or used in committing a crime;
☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| *Code Section* | *Offense Description* |
|---|---|
| Title 8, United States Code § 1324 | Transportation Of Illegal Aliens (a)(1)(A)(ii) |

The application is based on these facts:
See Attached Affidavit of Border Patrol Agent Wesley Cornue, incorporated herein by reference.

☑ Continued on the attached sheet.
☐ Delayed notice of _____ days *(give exact ending date if more than 30 days: _____)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

Wesley Cornue, Border Patrol Agent, U.S. Border Patrol
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by ___telephone___ *(specify reliable electronic means)*.

Date: ___03/31/2021___

*Judge's signature*

City and state: San Diego, California     HON. BERNARD G. SKOMAL, U.S. Magistrate Judge
*Printed name and title*

# AFFIDAVIT

I, Wesley Cornue, being duly sworn, hereby state as follows:

## INTRODUCTION

1. I submit this affidavit in support of an application for warrants to search the following electronic devices:

> Blue iPhone Cell Phone
> Seized as FP&F No. 2021565300020501
> ("Target Device")

the ("**Target Device**"), as further described in Attachment A to seize evidence of crime, specifically, violations of Title 8, United States Code, Section 1324 (Alien Smuggling), as further described in Attachment B.

2. The requested warrant relates to the investigation and prosecution of Ruben GONZALEZ and Alma Mariela LOPEZ for attempting to transport and move illegal aliens within the United States. The **Target Device** is currently in the custody of Department of Homeland Security, Customs and Border Protection, United States Border Patrol, located at 311 Athey Ave, San Ysidro, California.

3. The facts set forth in this affidavit are based upon my personal observations, my training and experience, and information obtained from various law enforcement personnel and witnesses, including my review of reports prepared by other law enforcement officers and agents. This affidavit is intended to show that there is sufficient probable cause for the requested warrants and does not purport to set forth all of my knowledge of the investigation into this matter. Dates and times are approximate.

1

## TRAINING AND EXPERIENCE

4. I have been employed by the USBP since 2007, and am currently assigned to the San Diego Sector Prosecutions Unit. I graduated from the Border Patrol Basic Academy at the Federal Law Enforcement Training Center in Artesia, New Mexico. I am a Federal Law Enforcement Officer within the meaning of Rule 41(a)(2)(C), Federal Rules of Criminal Procedure and have been a Federal Law Enforcement Officer for twelve years. I am authorized by Rule 41(a) Federal Rules of Criminal Procedure to make applications for search and seizure warrants and serve arrest warrants. I have experience and have received training with respect to conducting investigations of immigration and criminal violations of Titles 8, 18, 19, and 21 of the United States Code.

5. My current duties involve the preparation of criminal and administrative cases for prosecution, including the use of linking related subjects and information via electronic equipment and telephones. In the course of my duties, I investigate and prepare for prosecution cases against persons involved in the inducement, transportation, and harboring of illegal aliens into and within the United States; and, the utilization of illegally-obtained, counterfeit, altered or genuine immigration documents by illegal aliens to illegally gain entry or remain in the United States.

6. During my tenure as a Border Patrol Agent, I have participated in the investigation of a number of cases involving the smuggling of aliens from Mexico into the United States and transportation of illegal aliens within the United States, which have resulted in the issuance of arrest warrants, search warrants, seizure warrants, and the indictments of persons for alien smuggling, including drivers, passengers, and guides.

7. Through the course of my training, investigations, and conversations with other law enforcement personnel, I have gained a working knowledge of the operational habits of alien smugglers and alien transporters, in particular those who attempt to smuggle aliens into the United States from Mexico and transport them throughout the Southern District of California. I am aware that it is a common practice for alien smugglers to work

in concert with other individuals and to do so by utilizing cellular telephones to maintain communications with co-conspirators and/or illegal aliens in order to further their criminal activities. Because they are mobile, the use of cellular telephones permits alien smugglers and transporters to easily carry out various tasks related to their smuggling activities, including, *e.g.*, remotely monitoring the progress of the aliens while the aliens are in transit, providing instructions to transporters, guiding aliens to specific pick up locations, warning accomplices about law enforcement activity in the area and the status of check-point operations, and communicating with co-conspirators who guide aliens, coordinate drop off locations, and/or operate alien stash houses.

8. The smuggling of aliens generates many types of evidence, including, but not limited to, cellular phone-related evidence such as voicemail messages referring to the arrangements of travel, names, photographs, text messaging (via SMS or other applications), and phone numbers of co-conspirators and illegal aliens. For example, drivers and passengers responsible for transporting illegal aliens are typically in telephonic contact with co-conspirators immediately prior to and/or following the crossing of the illegal aliens at the border, at which time they receive instructions, including where to pick-up the illegal aliens for transportation into the United States and where to take the illegal aliens after crossing into the United States. These communications may also include locations for delivery to stash houses and/or sponsors. Illegal aliens also are typically in telephonic contact with co-conspirators prior to and following their crossing in order to make smuggling arrangements, receive instructions, and report their locations after crossing. It is common for alien smugglers to be in contact with co-conspirators weeks to months in advance of an event to recruit drivers and to coordinate the event. It is also common for co-conspirators to continue to contact each other by phone calls, social media, or messaging applications when contact is lost with the driver after an apprehension has occurred.

9. Based upon my training, experience, and consultations with law enforcement officers experienced in narcotics trafficking investigations, and all the facts and opinions set forth in this affidavit, I know that cellular telephones (including their Subscriber Identity Module (SIM) card(s)) can and often do contain electronic evidence, including, for example, phone logs and contacts, voice and text communications, and data, such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data. In particular, in my experience and consultation with law enforcement officers experienced in alien smuggling investigations, I am aware that individuals engaged in alien smuggling may store photos and videos on their cell phones that reflect or show co-conspirators and associates engaged in alien smuggling, as well as images and videos with geo-location data identifying alien smuggling transportation routes, and communications to and from recruiters and organizers.

10. This information can be stored within disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular telephone. Specifically, searches of cellular telephones may yield evidence:

   a. tending to indicate efforts to smuggle aliens from Mexico into the United States;

   b. tending to identify accounts, facilities, storage devices, and/or services–such as email addresses, IP addresses, and phone numbers–used to facilitate alien smuggling and transportation of smuggled aliens;

   c. tending to identify co-conspirators, criminal associates, or others involved in alien smuggling, or transportation of smuggled aliens;

   d. tending to identify travel to or presence at locations involved in the smuggling, transportation, or harboring of illegal aliens, such as stash houses, load houses, or delivery points;

   e. tending to identify the user of, or persons with control over or access to, the Target Device(s); and/or

4

    f. tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above.

## FACTS SUPPORTING PROBABLE CAUSE

11. On March 30, 2021, Border Patrol Agent A. Feldenzer was conducting traffic check duties at the State Route 94 (SR-94) Border Patrol Checkpoint in Jamul, California. At approximately 9:30 PM, Border Patrol Agent J. Gonzalez relayed information over the radio that a concerned citizen called the Brown Field Station, stating that they observed a Blue Honda Odyssey picking up possible illegal aliens from the side of the road on Deerhorn Valley Road. The citizen further stated that they were following the Odyssey traveling southbound on Honey Springs Road towards SR-94.

12. Agent Feldenzer proceeded to drive to the intersection of Honey Springs Rd. and SR-94. At approximately 9:40 PM, Agent Feldenzer observed a Blue Honda Odyssey approach the intersections of SR-94 and Honey Springs Rd. and continue westbound on SR-94. Agent Feldenzer pulled behind the Odyssey and proceeded to follow it westbound. Agent Feldenzer witnessed the Odyssey cross over the right shoulder lane line twice as he followed behind. This is a common occurrence when smugglers are looking in their mirrors attempting to determine if they are being followed by law enforcement. Agent Feldenzer also noticed that the vehicle was riding extremely low to the ground as if it were carrying too many passengers. After approximately one mile, Agent Feldenzer initiated a vehicle stop on the Odyssey 200 yards east of Rancho Jamul Drive on SR-94.

13. Upon approaching the Odyssey, Agent Feldenzer observed several individuals in the back seat. Agent Feldenzer also observed two children in car seats in the back seats. One of the individuals was attempting to conceal himself in the cargo compartment of the minivan. A total of ten individuals were present in the Odyssey.

5

14. Agent Feldenzer identified himself as a Border Patrol Agent to the driver, later identified as defendant Ruben GONZALEZ. The front seat passenger, later identified as defendant Alma Mariela LOPEZ, stated that the two children in the car seats were her children and that she didn't know who the other people were. Agent Feldenzer conducted an immigration inspection on the individuals in the back of the Odyssey to include three, later identified as material witnesses Ricardo PINA-Perez, Cesar SARABIA-Soto, and Efrain SOTO-Cano. Each individual in the back, to include PINA, SARABIA, and SOTO, stated that they are citizens of Mexico not in possession of any immigration documentation that would allow them to enter or remain in the United States legally. At approximately 9:45 PM, Agent Feldenzer placed the individuals in the back, to include PINA, SARABIA, and SOTO, under arrest. At approximately 9:50 PM, Agent Feldenzer placed defendants GONZALEZ and LOPEZ under arrest.

15. While agents were completing a post arrest inventory search, they discovered a Blue iPhone Cell Phone **("Target Device")** on GONZALEZ' person. GONZALEZ claimed ownership of the Blue iPhone Cell Phone **("Target Device")** and it was subsequently seized.

16. At the Station, defendant GONZALEZ was advised of his Miranda rights. GONZALEZ stated he understood his rights and was willing to answer questions. GONZALEZ stated he was being paid $1,000.00 USD per individual, for a total of $6,000.00 USD. GONZALEZ stated he was supposed to drop-off the six individuals to an unknown location in San Diego, California. GONZALEZ stated this was his first time attempting to pick-up illegal individuals. GONZALEZ stated his friend called him for the "job."

17. At the station, defendant LOPEZ was advised of her Miranda rights. LOPEZ stated she understood her rights and was willing to answer questions. LOPEZ stated her husband later identified as defendant Ruben GONZALEZ, asked her to accompany him to pick up a friend at an unknown place. LOPEZ stated they were in their Blue Honda

Odyssey and before she knew it, they were on a dark road away from the city. LOPEZ stated she sat in the front passenger seat while GONZALEZ drove their Odyssey. LOPEZ stated GONZALEZ suddenly pulled the Odyssey over to the side of the road, and got out to pee. LOPEZ stated during this time, an unknown number of individuals got into their Odyssey, and one individual even pushed her baby's car seat out of the way so that he could sit. LOPEZ stated she has never been involved in Alien Smuggling before and GONZALEZ just watched the individuals get into their Odyssey without saying anything. LOPEZ stated they drove off after all the individuals were in and were pulled over by Border Patrol Agents approximately five minutes later. LOPEZ stated by this point, she knew all the individuals were undocumented aliens based on what she just witnessed.

18.     At the station, Material witnesses PINA, SARABIA and SOTO admitted to being citizens of Mexico, illegally present in the United States, and not having documents that would allow them to enter or remain in the United States legally. PINA, SARABIA and SOTO admitted to making smuggling arrangements and had agreed to pay between $9,000.00 USD and $10,000.00 USD. PINA, SARABIA and SOTO stated that they were guided through the mountains. PINA, SARABIA and SOTO stated that there were two children in the van. PINA and SOTO stated that the driver was a male and that the co-pilot was a female. PINA stated the female spoke to them in the Spanish language and directed everyone to sit correctly or she would kick them out. PINA stated that he believes that the co-pilot knew they were undocumented because the foot guide had called them to pick them up. SARABIA stated that they were told by the foot guide that a van would be flashing its hazard lights upon arrival of the pick-up location. SARABIA stated that a woman inside the van told them to quickly get inside. SARABIA stated that the woman told them to be careful not to trample over the children and to calm down and not to act nervous. SOTO stated that the co-pilot told them in the Spanish language, to be careful with the children. SOTO stated that the driver had instructed in the Spanish language for them to hurry and

get inside the van. PINA was shown two photographic lineups and was able to identify defendant GONZALEZ as the driver and defendant LOPEZ as the co-pilot.

19. Based upon my experience and training, consultation with other law enforcement officers experienced in human trafficking investigations, and all the facts and opinions set forth in this affidavit, I believe that telephone numbers, contact names, electronic mail (email) addresses, appointment dates, messages, pictures, and other digital information are stored in the memory of the **Target Device**. In light of the above facts and my experience and training, there is probable cause to believe that the Defendant was using the **Target Device** to communicate with others to further illegal entry into the United States.  Based on my training and experience, it is also not unusual for individuals, such as the Defendant, to attempt to minimize the amount of time they were involved in their smuggling activities, and for the individuals to be involved for weeks and months longer than they claim.  Accordingly, I request permission to search the **Target Device** for data beginning on March 1, 2021 through March 30, 2021.

## METHODOLOGY

20. It is not possible to determine, merely by knowing the cellular telephone's make, model and serial number, the nature and types of services to which the device is subscribed and the nature of the data stored on the device. Cellular devices today can be simple cellular telephones and text message devices, can include cameras, can serve as personal digital assistants and have functions such as calendars and full address books and can be mini-computers allowing for electronic mail services, web services and rudimentary word processing. An increasing number of cellular service providers now allow for their subscribers to access their device over the internet and remotely destroy all of the data contained on the device. For that reason, the device may only be powered in a secure environment or, if possible, started in "flight mode" which disables access to the network. Unlike typical computers, many cellular telephones do not have hard drives or hard drive

equivalents and store information in volatile memory within the device or in memory cards inserted into the device. Current technology provides some solutions for acquiring some of the data stored in some cellular telephone models using forensic hardware and software. Even if some of the stored information on the device may be acquired forensically, not all of the data subject to seizure may be so acquired. For devices that are not subject to forensic data acquisition or that have potentially relevant data stored that is not subject to such acquisition, the examiner must inspect the device manually and record the process and the results using digital photography. This process is time and labor intensive and may take weeks or longer.

21. Following the issuance of this warrant, a case agent familiar with the investigation will collect the subject cellular telephone and subject it to analysis. All forensic analysis of the data contained within the telephone and its memory cards will employ search protocols directed exclusively to the identification and extraction of data within the scope of this warrant.

22. Based on the foregoing, identifying and extracting data subject to seizure pursuant to this warrant may require a range of data analysis techniques, including manual review, and, consequently, may take weeks or months. The personnel conducting the identification and extraction of data will complete the analysis within 90 days, absent further application to this court.

**PRIOR ATTEMPTS TO OBTAIN THIS EVIDENCE**

23. Law enforcement has previously attempted to obtain the evidence sought by this warrant through the owners' consent. Consent was not given.

9

## CONCLUSION

24. Based on the facts and information set forth above, there is probable cause to believe that a search of the **Target Device** will yield evidence of alien smuggling violation of Title 8, United States Code, Sections 1324.

25. Because the **Target Device** was seized at the time of GONZALEZ' arrest and has been securely stored since that time, there is probable cause to believe that such evidence continues to exist on the **Target Device**. As stated above, I believe that the appropriate date range for this search is from **March 1, 2021 through March 30, 2021.**

26. Accordingly, I request that the Court issue warrants authorizing law enforcement to search the item(s) described in Attachment A, and seize the items listed in Attachment B using the above-described methodology.

I swear the foregoing is true and correct to the best of my knowledge and belief.

*Wesley Cornue*

Wesley Cornue
Border Patrol Agent

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone on this 31st day of March, 2021.

HON. BERNARD G. SKOMAL
United States Magistrate Judge

10

# ATTACHMENT A

PROPERTY TO BE SEARCHED

The following property is to be searched:

Blue iPhone Cell Phone
Seized as FP&F No. 2021565300020501
("Target Device")

Target Device is currently in the custody of the Department of Homeland Security, Customs and Border Protection, United States Border Patrol, located at 311 Athey Ave, San Ysidro, California.

11

# ATTACHMENT B

## ITEMS TO BE SEIZED

Authorization to search the cellular telephone described in Attachment A, and includes the search of disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular telephone for evidence described below. The seizure and search of the cellular telephone shall follow the search methodology described in the affidavit submitted in support of the warrants.

The evidence to be seized from the cellular telephone will be electronic records, communications, and data such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data, for the period of **March 1, 2021 through March 30, 2021**:

a. tending to indicate efforts to smuggle aliens from Mexico into the United States;

b. tending to identify accounts, facilities, storage devices, and/or services– such as email addresses, IP addresses, and phone numbers–used to facilitate alien smuggling and transportation of smuggled aliens;

c. tending to identify co-conspirators, criminal associates, or others involved in alien smuggling, or transportation of smuggled aliens;

d. tending to identify travel to or presence at locations involved in the smuggling, transportation, or harboring of illegal aliens, such as stash houses, load houses, or delivery points;

e. tending to identify the user of, or persons with control over or access to, the Target Device(s); and/or

f. tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above,

which are evidence of violations of Title 8, United States Code, Section 1324.